1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **WESTERN DISTRICT OF WASHINGTON**

10

11   JEFFREY EHLI, on behalf of himself and all
     others similarly situated,                          Case No.

12
                                    Plaintiff,           **COMPLAINT—CLASS ACTION**
13
                                                         **DEMAND FOR JURY TRIAL**
14        vs.

15   DENTEGRA INSURANCE COMPANY.,

16                                  Defendant.

17

18         Plaintiff, Jeffrey Ehli ("Plaintiff"), brings this Class Action Complaint ("Complaint")

19   against Defendant Dentegra Insurance Company ("Dentegra" or "Defendant") individually and

20   on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own

21   actions and his counsels' investigation, and upon information and belief as to all other matters,

22   as follows:

23

24

25

26

27

COMPLAINT—CLASS ACTION - 1

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 ● FAX 872.2263.1109
www.straussborelli.com

# I.  NATURE OF ACTION

1.      This action arises out of Defendant's failures to safeguard the confidential Protected Health Information ("PHI") and Personally Identifying Information[1] (collectively, "PII") of its plan members, including Plaintiff and the proposed Class Members, resulting in the unauthorized disclosure of that PII in a cyberattack in May 2023 (the "Data Breach") to Dentegra's vendor, MOVEit.[2] The PII disclosed in the Data Breach included Plaintiff and Class Members' dates of birth, Social Security Numbers, and health insurance information.

2.      Defendant Dentegra is dental insurance provider headquartered in California.[3] Dentegra provides dental savings plans and affordable dental insurance plans through the Heath Care Marketplace.[4]

3.      As a condition of providing dental insurance benefit services, Dentegra required its plan members to provide it with their PII, including names, dates of birth, and social security numbers.

4.      Dentegra engaged MOVEit, a third-party vendor, for its file transfer software and services.[5]

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that  may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] *See* Dentegra Insurance Company Notice of Data Security Event, **(hereinafter "Data Breach Notice") attached as Exhibit A**.

[3] https://www.dentegra.com/ (last visited May 31, 2024).

[4] https://www.dentegra.com/dental-plans/health-care-exchange-plans.html (last acc. May 31, 2024). See also https://www.healthcare.gov/get-coverage/

[5] **Exhibit A.**

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 ● FAX 872.2263.1109
www.straussborelli.com

5.      Unbeknownst to Plaintiff and the proposed Class Members, Defendant provided Plaintiff and Class Members' PII to MOVEit.

6.      Dentegra failed to undertake adequate measures to ensure that MOVEit safeguarded the PII of Plaintiff and the proposed Class Members, including failing to ensure that MOVEit implemented industry standards for data security, and properly trained employees on cybersecurity protocols, resulting in the Data Breach.

7.      Although Dentegra discovered the Data Breach on or about June 1, 2023, Defendant failed to promptly notify and warn Data Breach victims of the unauthorized disclosure of their PII for over seven months, preventing them from taking necessary steps to protect themselves from injury and harm.

8.      As a direct and proximate result of Defendant's failures to protect Plaintiff's and the Class Members' sensitive PII and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

## II.  PARTIES

9.      Plaintiff, Jeffrey Ehli, is a natural person and citizen of Washington. He resides in Seattle, Washington where he intends to remain. And now, Plaintiff is a victim of Defendant's Data Breach.

10.     Defendant, Dentegra Insurance Company, is a California stock corporation with its principal place of business at 560 Mission Street, Suite 1300, San Francisco, California.

## III.  JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and

COMPLAINT—CLASS ACTION - 3

costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class Members.

12.    This Court has jurisdiction over Defendant because it regularly conducts business in Washington, and has sufficient minimum contacts in Washington.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## IV.  BACKGROUND FACTS

### Defendant Dentegra

14.    Defendant Dentegra provides dental savings plans and affordable dental insurance plans. Consumers have the option of purchasing dental insurance plans through the Health Care Marketplace or by joining Dentegra's dental savings plan.[6] The dental savings plan is a non-insurance plan, also known as a "discount plan" that allows consumers to "save on qualifying procedures when [they] visit a network provider."[7]

15.    As a condition of receiving dental insurance benefit services from Dentegra, Defendant requires its customers to provide it with their private, sensitive, PII, including their including their names, Social Security numbers, and dates of birth, which it stores in its information technology systems, and which it provides its third party vendors, including MOVEit.

16.    In collecting and maintaining PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII.

---

[6] Dentegra's dental insurance plan and dental savings plans may be collectively referred to in this Complaint as "dental insurance."
[7] https://www.dentegra.com/dental-plans.html (last accessed Feb. 7, 2024).

COMPLAINT—CLASS ACTION - 4

17.     Dentegra acknowledges the importance of maintaining the security of its customers' PII it collects, stating to Data Breach victims that "Data security is a priority for Dentegra."[8]

18.     In fact, Dentegra maintains a Privacy Policy and HIPAA Notice of Privacy Practices ("Privacy Policy") (attached as **Exhibit B**) that are posted on its website.[9] In its Privacy Policy, Dentegra promises its customers that "Your privacy is important to us, and we are committed to protecting it." *Id*.  The Privacy Policy further states:

**Sharing of information**

We do not sell your information. We may share your information with third party companies as necessary to administer your benefits or to provide you with services you have requested from us.

We may also share your information as required or permitted by law.

* * * * *

**Our commitment to website security**

Our secure, password-protected website allows you to view private information (for example, eligibility, benefits and claims) and other information online. We use industry-standard firewalls and encryption to protect your information. You need an ID and password to access any online systems that display personal information. Our website features SSL (Secure Sockets Layer) with a digital certificate to enforce a minimum of 128-bit encrypted sessions.

We conduct regular web application vulnerability assessments and quarterly third party tests to ensure all of our externally facing websites/Internet addresses are protected from attack incompliance with industry standards.

**Ex. B**, Privacy Policy.

19.     The HIPAA Notice of Privacy Practices further represents to customers that Dentegra only sends its customers' PII and protected health information ("PHI") to third-parties

---

[8] Ex. A.

[9] https://www.dentegra.com/smileclub/privacy-policy.html (last accessed May 31, 2024).

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

who Dentegra has ensured implement privacy policies that comply with federal and state law:

> As permitted by law, we may disclose PHI to third-party affiliates that perform services for Dentegra to administer your benefits, and who have signed a contract agreeing to protect the confidentiality of your PHI, and have implemented privacy policies and procedures that comply with applicable federal and state law.

*Id.*

20.     Despite the foregoing, Dentegra provided its customers' PII, including that of Plaintiff and the proposed Class, to its third-party vendor, which was then stored in its vendors' systems, without Dentegra ensuring that the vendor adequately safeguarded Dentegra's customers' PII.

21.     Despite recognizing its duty to do so, on information and belief, Dentegra did not ensure that its vendor implemented reasonably cybersecurity safeguards or policies to protect its consumers' PII or supervised its information technology or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, there were significant vulnerabilities in the systems used to systems for cybercriminals to exploit and gain access to consumers' PII, resulting in the Data Breach.

22.     In addition, Dentegra, by and through its agents and employees, represented to its customers, Plaintiff and the proposed Class Members, that Defendant would adequately protect their PII and not disclose said information other than as authorized, including as set forth in its Privacy Policy.

23.     Plaintiff and the proposed Class Members, current and former customers of Dentegra, would not have entrusted their PII to Defendant in the absence of its promises to safeguard that information, including as set forth in its Privacy Policy.

24.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the proposed Class Members' PII, Defendant assumed legal and equitable duties to Plaintiff, and the

COMPLAINT—CLASS ACTION - 6

members of the Proposed Class, and knew or should have known that it was responsible for protecting his and their PII from unauthorized disclosure.

25.    At all times Plaintiff and the members of the proposed Class, have taken reasonable steps to maintain the confidentiality of their PII; and, Plaintiff and the proposed Class Members, as current and former customers of Dentegra, relied on Defendant to keep their PII confidential and securely maintained.

**A.  The Data Breach**

26.    Plaintiff and the proposed Class Members are current and former dental insurance plan and dental savings members of Defendant, Dentegra.

27.    As a condition of providing dental insurance and dental savings benefit services, Defendant collected the PII of its customers, Plaintiff and the proposed Class Members, including but not limited to their names, addresses, dates of birth, and Social Security numbers.

28.    In collecting and maintaining PII, Defendant implicitly agrees that it will safeguard the data using reasonable means according to industry standards, its internal policies, as well as state and federal law. This duty extends to Dentegra entrustment customers' PII to its third party vendors.

29.    Defendant provided Plaintiff's and the Class Members' PII to its third-party vendor, MOVEit, who Dentegra uses as a secure file-transfer tool.[10]

30.    On or about May 27, 2023, the PII of Plaintiff and the proposed Class Members which was entrusted to Dentegra was unauthorizedly disclosed to cybercriminals in the Data Breach, a Clop ransomware or external system breach attack impacting the MOVEit Transfer tool and the PII stored within.

---

[10] Data Breach Notice, Exhibit A.

COMPLAINT—CLASS ACTION - 7

31.    According to Dentegra, as stated in the Data Breach Notice:

On June 1, 2023, Dentegra learned unauthorized actors exploited a vulnerability affecting the MOVEit file transfer software application.  Immediately after being alerted of the incident, we launched a thorough investigation and took steps to contain and remediate the incident. We stopped access to the MOVEit software, removed the malicious files, conducted a thorough analysis of the MOVEit database, applied the recommended patches, and reset administrative passwords to the MOVEit systems.  We also enhanced unauthorized access monitoring related the MOVEit Transfer file access, malicious activity, and ransomware activity.

On October 1, 2023, our investigation confirmed that Dentegra information on the MOVEit platform had been accessed and acquired without authorization between May 27,2023 and May 30, 2023.  We engaged independent third-party experts in computer forensics, analytics and data mining to determine what information was impacted and with whom it was associated.

Ex. A.

32.    Further, according to Dentegra, the investigation enabled it to identify "specific personal information that was acquired from the MOVEit platform." *Id*. On November 27, 2023, Dentegra determined Plaintiff's and Class Members' personal information was affected.

33.    In reality, the Data Breach was executed by the notorious Clop ransomware gang, which claimed responsibility for the cyberattack, exploiting the MOVEit Transfer and MOVEit Cloud vulnerability for nefarious purposes and exfiltrating Plaintiff's and the proposed Class Members' PII. Clop is one of the most active ransomware actors, having breached over 2,000 organizations directly or indirectly in the MOVEit Transfer tool or cloud cyberattacks.[11]

34.    Dentegra, a sophisticated dental benefits provider, knew or should have known of the tactics that groups like Clop employ.

35.    Beginning on or around January 12, 2024, Dentegra began notifying its customers

---

[11]    "Matthew J. Schwartz, Bankinfosecurity.com, "Data Breach Toll Tied to Clop Group's MOVEit Attack Surges," Sept. 25, 2023, avail. at https://www.bankinfosecurity.com/data-breach-toll-tied-to-clop-groups-moveit-attacks-surges-a-23153 (last acc. Dec. 12, 2023).

COMPLAINT—CLASS ACTION - 8

of the Data Breach by letter, the Data Breach Notice.[12]

36.     Regarding steps Dentegra had taken in response to the Data Breach, Dentegra stated it "appl[ies] security patches for known vulnerabilities provided by third-party software vendors, regularly update[s] [its] capabilities to monitor potential security threats and consistentl manage[s] access to [its] systems and data." *Id.*

37.     In its Data Breach Notice, Dentegra recognized the significant harm caused by the Data Breach.  Dentegra advised the Data Breach victims as follows:

**What You Can Do:**

We encourage you to remain vigilant by reviewing your account statements and credit reports closely and immediately reporting any suspicious activity to the company that maintains the account for you. At the end of this letter, we have provided you with additional information regarding steps you can take to help protect yourself and your personal information, including recommendations by the Federal Trade Commission regarding identity theft protection and details on how to place a fraud alert or a security freeze on your credit file. **We encourage you to review that additional information.**

*Id.*

38.      Furthermore, Dentegra offered Data Breach victims 24 months of complimentary credit monitoring and identity restoration services through Kroll.[13]

39.     Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing consumers' PII and ensuring that its vendor properly secured customers' PII, as evidenced by the Data Breach.

40.     Dentegra failed to adequately protect the PII of its current and former customers, Plaintiff and the proposed Class Members, stored in its networks and which Dentegra gave to MOVEit, resulting in the Data Breach.

---

[12] Data Breach Notice, Exhibit A.
[13] *Id.*

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

41.     Dentegra failed to ensure that its vendor, MOVEit, employed adequate cybersecurity measures and adequately trained its employees on reasonable cybersecurity protocols to protect Dentegra's customers' PII, causing the PII of Plaintiff and the proposed Class Members to be unauthorizedly disclosed in the Data Breach.

42.     As a result of the Data Breach, its victims face a lifetime risk of identity theft, as it includes sensitive information that cannot be changed, like their dates of birth and Social Security numbers. Accordingly, any credit monitoring and identity theft protection which Dentegra may offer is wholly insufficient to compensate Plaintiff and the Class Members for their damages resulting therefrom.

43.     Indeed, as a result of the Data Breach which Defendant permitted to occur by virtue of its inadequate data security practices, Plaintiff and the proposed Class Members have suffered injury and damages, as set forth herein.

**B.  The Data Breach was a Foreseeable Risk of which Defendant was on Notice.**

44.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the file-transfer software industry preceding the date of the breach, including recent similar attacks against secure file transfer companies like Accellion and Fortra carried out by the same Russian cyber gang, Clop.[14]

45.     In light of recent high profile data breaches at other file-transfer software companies, Defendant knew or should have known that its electronic records and consumers' PII would be targeted by cybercriminals.

---

[14]     See    https://www.bleepingcomputer.com/news/security/global-accellion-data-breaches-linked-to-clop-ransomwaregang/    (last    visited    on    June    21,    2023);    see    also https://www.bleepingcomputer.com/news/security/fortra-sharesfindings-on-goanywhere-mft-zero-day-attacks/ (last visited on June 21, 2023).

COMPLAINT—CLASS ACTION - 10

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

46.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[15] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[16]

47.     Indeed, cyberattacks have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[17]

48.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Dentegra.

### C. Plaintiff Jeffrey Ehli's Experience

49.     Plaintiff receives dental insurance benefits through Dentegra.

50.     Plaintiff was notified by Dentegra of the Data Breach by letter, which he received on or after January 12, 2024.

51.     Plaintiff entrusted his PII to Dentegra as a condition of receiving dental plan services, including but not limited to his name, date of birth, address, and Social Security Number.

---

[15]     2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited June 13, 2023).

[16] *Id.*

[17]     Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited June 13, 2023).

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

52.     On information and belief, Dentegra utilized MOVEit as a third-party vendor, and entrusted it with Plaintiff's and Class Members' valuable PII, which was stored in MOVEit's systems.

53.     As a direct and proximate result of the Data Breach, Plaintiff has suffered, and imminently will suffer, injury-in-fact and damages.

54.     As a result of the Data Breach, Plaintiff has and will spend time dealing with the consequences of the Data Breach, which will include time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred.. This time has been lost forever and cannot be recaptured.

55.     Plaintiff has experienced feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

56.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

57.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and possibly criminals.

58.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**D.  Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

59.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

60.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered and will continue to suffer damages, including unauthorized disclosure of this PII onto the Dark Web, monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a)    The loss of the opportunity to control how their PII is used;

b)    The diminution in value of their PII;

c)    The compromise and continuing publication of their PII;

d)    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e)    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f)    Delay in receipt of tax refund monies;

g)    Unauthorized use of stolen PII; and

h)    The continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

61.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

62.     The value of Plaintiff's and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

63.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

64.     One such example of criminals using PII for profit is the development of "Fullz" packages.

65.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

66.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact,

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

including this Court or a jury, to find that Plaintiff's and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

67.     Defendant disclosed the PII of Plaintiff and the Class to its vendor, MOVEit, who failed to take adequate measures to safeguard that PII, which was unauthorizedly disclosed in the Data Breach for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

68.     Defendant's failure to promptly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**E.  Defendant failed to adhere to FTC guidelines.**

69.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

70.     In 2016, the FTC updated its publication, *Protecting Private Information: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of Private Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any

COMPLAINT—CLASS ACTION - 15

security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[18]

71.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[19]

72.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.     These FTC enforcement actions include actions against entities failing to safeguard Private Information such as Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

---

[18] *See* Federal Trade Commission, October 2016, "Protecting Private information: A Guide for Business," available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last acc. Apr. 14, 2023).
[19] *See id.*

COMPLAINT—CLASS ACTION - 16

74.     Dentegra failed to ensure that the vendor to whom Defendant gave its customers' PII properly implemented basic data security practices widely known throughout the industry.

75.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

76.     Defendant was at all times fully aware of its obligations to protect the PII of its current and former customers. Defendant was also aware of the significant repercussions that would result from their failure to do so.

**F.  Defendant Fails to Comply with Industry Standards**

77.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

78.     Several best practices have been identified that a minimum should be implemented by entities in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

79.     Other best cybersecurity practices that are standard for entities include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security

COMPLAINT—CLASS ACTION - 17

systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

80.     Defendant failed to ensure that its vendor, MOVEit, to whom it gave Plaintiff's and the proposed Class Members' PII, met the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**81.**     These foregoing frameworks are existing and applicable industry standards for an company's obligations to provide adequate data security for its customers. Upon information and belief, Defendant failed to ensure that its vendor complied with at least one–or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## V.  CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following nationwide class ("Nationwide Class" or "Class"):

> **All individuals who were customers of Defendant and/or who entrusted their PII to Defendant and whose PII was compromised in the Data Breach and MOVEit vulnerability.**

83.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any

COMPLAINT—CLASS ACTION - 18

1   successor or assign, and any Judge who adjudicates this case, including their staff and immediate

2   family.

3       84.    Plaintiff reserves the right to amend the class definition.

4       85.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

5   Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as

6   would be used to prove those elements in individual actions asserting the same claims.

7       86.    **Numerosity**. The Class Members are so numerous that joinder of all Class

8   Members is impracticable.

9       87.    **Commonality and Predominance**. Plaintiff and the Class's claims raise

10  predominantly common fact and legal questions, which predominate over any questions

11  affecting individual Class members, that a class wide proceeding can answer for all Class

12  members. Indeed, it will be necessary to answer the following questions:

13          a.    Whether Defendant had a duty to use reasonable care in safeguarding

14              Plaintiff's and the Class's PII, including exercising reasonable care in

15              ensuring that its vendors to whom it gave PII adequately safeguarded

16              customers' PII;

17          b.    Whether Defendant failed to implement and maintain reasonable

18              security procedures and practices appropriate to the nature and scope

19              of the information compromised in the Data Breach and failed to ensure

20              that its vendors implemented and maintained reasonable security

21              procedures and practices appropriate to the nature and scope of the

22              information compromised in the Data Breach;

23          c.    Whether Defendant were negligent in maintaining, protecting, and

24              securing PII including whether Defendant was negligent in ensuring

25              that its vendors maintained, protected, and secured PII;

26

27

COMPLAINT—CLASS ACTION - 19

d.   Whether Defendant breached contractual promises to safeguard Plaintiff's and the Class's PII;

e.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.   Whether Defendant's Data Breach Notice was reasonable;

g.   Whether the Data Breach caused Plaintiff's and the Class's injuries;

h.   What the proper damages measure is; and

i.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

88.   **Typicality**. Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

89.   **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class members' interests. They have also retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

90.   **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all parties and the courts.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

91.     Plaintiff realleges all previous paragraphs as if fully set forth below.

92.     Plaintiff and Class Members entrusted their PII to Defendant. Defendant owed to Plaintiff and other Class Members a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

93.     Defendant owed Plaintiff and other Class Members a duty to ensure that its vendor implemented industry-standard security procedures sufficient to reasonably protect the PII from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detected attempts at unauthorized access.

94.     Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security, and failing to ensure that its vendor adequately safeguarded their PII in accordance with state-of-the-art industry standards concerning data security, would result in the compromise of that PII—just like the Data Breach that ultimately came to pass.

95.     Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff' and Class Members' PII by disclosing and providing access to this information to third parties that did not adequately protect this PII and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

96.     Defendant owed to Plaintiff and Class Members a duty to notify them within a

COMPLAINT—CLASS ACTION - 21

1    reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to

2    timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence

3    of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take

4    appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm,

5    and to take other necessary steps to mitigate the harm caused by the Data Breach.

6        97.    Defendant owed these duties to Plaintiff and Class Members because they are

7    members of a well-defined, foreseeable, and probable class of individuals whom Defendant

8    knew or should have known would suffer injury-in-fact from Defendant's inadequate security

9    protocols. Defendant actively sought and obtained Plaintiff' and Class Members' personal

10   information and PII.

11       98.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and

12   adequate computer systems and data security practices to safeguard Plaintiff and Class Members'

13   PII and to ensure its vendors provided the same security practices.

14       99.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

15   commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by

16   businesses, such as Defendant, of failing to use reasonable measures to protect consumers' PII.

17   The FTC publications and orders promulgated pursuant to the FTC Act also form part of the

18   basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive PII.

19       100.   Defendant violated its duty under Section 5 of the FTC Act by failing to use

20   reasonable measures to protect PII and not complying with applicable industry standards as

21   described in detail herein. Defendant's conduct was particularly unreasonable given the nature

22   and amount of PII Defendant had collected and stored and the foreseeable consequences of a

23   data breach, including, specifically, the immense damages that would result to individuals in the

24   event of a breach, which ultimately came to pass.

25       101.   The risk that unauthorized persons would attempt to gain access to the PII and

26   misuse it was foreseeable. Given that Defendant's vendor, MOVEit holds vast amounts of PII,

27

COMPLAINT—CLASS ACTION - 22

it was inevitable that unauthorized individuals would attempt to access Defendant's vendors' databases containing the PII—whether by malware or otherwise.

102.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

103.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

104.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

105.    Plaintiff and Class Members incorporate the above allegations as if fully set forth herein.

COMPLAINT—CLASS ACTION - 23

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

106.     Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Defendant's services.

107.     In turn, and through internal policies, Defendant agreed they would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard PII.

108.     Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for dental insurance services.

109.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

110.     Plaintiff and the Class Members would not have entrusted their PII to Defendant or its third-party agents in the absence of such agreement with Defendant.

111.     Defendant materially breached the contract(s) it had entered with Plaintiff and Class Members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and Class Members by:

    a.      Failing to properly safeguard and protect Plaintiff and Class Members' PII, including ensuring its vendors to whom it gave PII adequately safeguarded customers' PII;

    b.      Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c.      Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

112.     The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of their agreement(s).

113.     Plaintiff and Class Members have performed as required under the relevant

COMPLAINT—CLASS ACTION - 24

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

agreements, or such performance was waived by the conduct of Defendant.

114.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

115.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

116.    Defendant failed to advise Plaintiff and Class Members of the Data Breach promptly and sufficiently.

117.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

118.    Plaintiff and Class Members have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

119.    Plaintiff and Class Members incorporate the above allegations as if fully set forth herein.

120.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

121.    Plaintiff and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII to facilitate its dental insurance business.

COMPLAINT—CLASS ACTION - 25

122.    Defendant itself admits that it collects customers personal information to "help [Dentegra] provide [customers] with tools and services related to [its] dental plans."[20]

123.    Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members. And simply put, Defendant benefited from the receipt of Plaintiff and Class Members' PII, as this was used to provide its services.

124.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendant failed to adequately protect their PII.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## FOURTH CAUSE OF ACTION
### Violation of the Washington Data Breach Disclosure Law
### (On Behalf of Plaintiff and the Class)

126.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

127.    Under RCW § 19.255.010(2), "[a]ny person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

128.    Here, the Data Breach led to "unauthorized acquisition of computerized data that compromise[d] the security, confidentiality, [and] integrity of personal information maintained

---

[20] Ex. B, Privacy Policy.

COMPLAINT—CLASS ACTION - 26

by" Defendant, leading to a "breach of the security of [Defendant's] systems," as defined by RCW § 19.255.010.

129.    Defendant failed to disclose that the PII—of Plaintiff and Class Members—that had been compromised "immediately" upon discovery, and thus unreasonably delayed informing Plaintiff and the proposed Class about the Data Breach. Instead, Defendant waited over seven months to begin notifying the Class.

<u>**FIFTH CAUSE OF ACTION**</u>
**Violation of the Washington Consumer Protection Act**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

131.    Defendant is a "person" under the Washington Consumer Protection Act, RCW § 19.86.101(1), and they conduct "trade" and "commerce" under RCW § 19.86.010(2).

132.    Plaintiff and other members of the proposed Class are "persons" under RCW § 19.86.010(1).

133.    Defendant's failure to safeguard the PII exposed in the Data Breach constitutes an unfair act that offends public policy.

134.    Defendant's failure to safeguard the PII compromised in the Data Breach caused Plaintiff and the proposed Class substantial injury. Defendant's failure is not outweighed by any countervailing benefits to consumers or competitors, and it was not reasonably avoidable by consumers.

135.    Defendant's failure to safeguard the PII disclosed in the Data Breach, and its failure to give time and complete notice of the Data Breach to victims, is unfair because these acts and practices are immoral, unethical, oppressive, and unscrupulous.

136.    Defendant's unfair acts or practices occurred in its trade or business and have injured and can injure a substantial portion of the public. Defendant's general conduct as alleged

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

injures the public interest, and the acts Plaintiff complains of are ongoing and have a substantial likelihood of being repeated.

137.   As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and the proposed Class suffered an injury in fact.

138.   Because of Defendant's conduct, Plaintiff and Class Members suffered actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's conduct, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

139.   Plaintiff and the proposed Class are entitled to an order enjoining the conduct complained of and ordering Defendant to take remedial measures to prevent similar data breaches; actual damages; treble damages under § 19.86.090; and the costs of bringing this suit, including reasonable attorney fees.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

140.   Plaintiff and Class Members incorporate the above allegations as if fully set forth herein.

141.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

142.   An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate

COMPLAINT—CLASS ACTION - 28

**STRAUSS BORELLI LLP**
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com

and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

143.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII with which it is entrusted, to ensure the same of its vendors with whom Defendant shares PII, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

        b.    Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure individuals' personal and financial information; and

        c.    Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

144.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its clients' (i.e. Plaintiff's and the Class's) data.

145.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable—do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not

COMPLAINT—CLASS ACTION - 29

1    legally quantifiable or provable.

2        146.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the

3    hardship to Defendant if an injunction is issued.

4        147.    Issuance of the requested injunction will not disserve the public interest. To the

5    contrary, such an injunction would benefit the public by preventing another data breach, thus

6    eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

7                        **VI.  PRAYER FOR RELIEF**

8        Plaintiff and Class Members demand a jury trial on all claims so triable and request that

9    the Court enter an order:

10   A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class,

11         appointing Plaintiff as class representative, and appointing her counsel to

12         represent the Class;

13   B.    Awarding declaratory and other equitable relief as is necessary to protect the

14         interests of Plaintiff and the Class;

15   C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and

16         the Class;

17   D.    Enjoining Defendant from further deceptive practices and making untrue

18         statements about the Data Breach and the stolen PII;

19   E.    Awarding Plaintiff and the Class damages that include applicable compensatory,

20         exemplary, punitive damages, and statutory damages, as allowed by law;

21   F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be

22         determined at trial;

23   G.    Awarding attorneys' fees and costs, as allowed by law;

24   H.    Awarding prejudgment and post-judgment interest, as provided by law;

25   I.    Granting Plaintiff and the Class leave to amend this complaint to conform to the

26         evidence produced at trial; and

27

COMPLAINT—CLASS ACTION - 30

1    J.      Granting such other or further relief as may be appropriate under the

2    circumstances.

3                        **VII.  DEMAND FOR JURY TRIAL**

4    Plaintiff hereby demands a trial by jury as to all claims of the Complaint so triable.

5

6    DATED this 31st day of May, 2024.

7

8                                    Respectfully submitted,

9                                    */s/ Walter Smith*

10                                   SMITH & DIETRICH LAW OFFICES PLLC
                                     Walter Smith, WSBA #46695
11                                   Email: walter@smithdietrich.com
                                     3905 Martin Way E., Suite F
12                                   Olympia, WA 98506
                                     Telephone: (360) 915-6952
13
                                     Samuel J. Strauss, WSBA #46971
14                                   Raina Borelli (*Pro Hac Vice* forthcoming)
                                     STRAUSS BORELLI PLLC
15                                   908 N. Michigan Avenue, Suite 1610
                                     Chicago Illinois 60611
16                                   Telephone: (872) 263-1100
                                     Facsimile: (872) 263-1109
17                                   sam@straussborrelli.com
                                     raina@straussborrelli.com
18

19

20                                   Lynn A. Toops (*Pro Hac Vice* forthcoming)
                                     Amina A. Thomas (*Pro Hac Vice* forthcoming)
21                                   COHEN & MALAD, LLP
                                     One Indiana Square, Suite 1400
22                                   Indianapolis, Indiana 46204
                                     (317) 636-6481
23                                   ltoops@cohenandmalad.com
                                     athomas@cohenandmalad.com
24

25

26

27

COMPLAINT—CLASS ACTION - 31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

J. Gerard Stranch, IV (*Pro Hac Vice* forthcoming)
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

***Counsel for Plaintiff and the Proposed Class***

STRAUSS BORELLI LLP
908 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.2263.1100 • FAX 872.2263.1109
www.straussborelli.com